## Case No. 12,343.

### The SARAH BERNICE.

[1 Hask. 78.] [1]

District Court, D. Maine. April, 1867.

FORFEITURE—LANDING GOODS WITHOUT PERMIT—IMPORTATION OF BRANDY—QUANTITY—ALLEGATIONS IN LIBEL.

1. To create a forfeiture of the vessel under section 50 of the act of 1799 [1 Stat. 665], for landing foreign goods without a permit, the goods must come from one cargo, and be landed from the same vessel, but not at the same time.

2. Allegations in the libel, as to the goods landed and their value, bind the government.

3. A forfeiture of the vessel is not created under the act of 1799 as modified by the act of 1827 [4 Stat. 235], prohibiting the importation of brandy in casks of less than fifteen gallons capacity, by a seaman landing about two gallons of brandy, all that remained of a purchase in a foreign port taken on board for his own use on the voyage home.

In admiralty. Libel in rem by the United States, claiming a forfeiture of the brig Sarah Bernice for landing foreign goods, subject to duty, of the value of $400, without a permit, and for importing brandy in a cask of less capacity than fifteen gallons. The claimant by answer denied the averments of the libel, and alleged that if any brandy was imported as charged in the libel, that it was in quantities allowed by law, and for the use of the crew.

Geo. F. Talbot, Dist. Atty., for the United States.

Bion Bradbury and L. D. M. Sweat, for claimant.

FOX, District Judge. This libel contains a number of counts. By the first, a forfeiture of the vessel is claimed for landing eight barrels of molasses of the value of $250, two barrels of sugar of the value of $150, and one thousand cigars of the value of one hundred dollars, brought in her from Cienfuegos, in the island of Cuba, and landed March 20, 1866, at Machiasport, not in open day, but in the night time and without the special license of the officers of the port, the articles being of the value of $400. The third count is for landing the same articles without any permit.

The second count is for landing five chests of tea, one box of tobacco, and ten gallons of brandy, brought in the vessel from St. John to Machiasport, and there landed in the night time on the 12th of April without a special permit. The fourth count is for land-

ing those articles without any permit. The value of the articles landed is alleged to be over $400.

The fifth count claims a forfeiture for the importation from St. John, N. B., of brandy into Machiasport on the 12th of April, 1866, in a cask of less capacity than fifteen gallons. It appears that this brig was owned by the claimant, a resident of Machias; that she took on board as freight, a full cargo of molasses and two barrels of sugar at Cienfuegos bound for St. John; that by reason of bad weather on her voyage to St. John, her master found it convenient to make a harbor at Machiasport, and whilst there, in the night time landed three boat loads from the vessel, consisting of eight barrels of molasses, two of sugar, and ten boxes, each containing 100 cigars. There is no pretense that the molasses was purchased by the master or any of his crew, but it is claimed that this molasses so landed was saved by the crew from the deck where it had been spilled or foamed over from the casks in Cuba, and was gathered up, put into pork and beef barrels, and became a perquisite to be divided among the crew, being mixed with dirt and chips, and of little value. I do not find sufficient evidence to warrant such a conclusion. On the contrary, I am constrained to believe that all this molasses was purloined from the cargo by the officers and crew acting in concert, and that Machiasport was resorted to voluntarily for the purpose of landing it and defrauding its owner.

It appears that the cargo on its discharge at St. John fell short 1,000 gallons. This in itself would not be conclusive evidence of any plundering by the master and crew, as such an amount, I suppose is not unfrequently lost by ordinary leakage; but there is another circumstance testified to by the owner of the cargo, which satisfies me of the fraud of those on board, and that is, that a number of the hogsheads had been filled with salt water, a few gallons of molasses having been left in them to color the water; this must certainly have been done for a fraudulent purpose by those in charge of the vessel, and no explanation being given of it. I think I am fully justified in finding that the contents of the barrels were not of the poor, mixed description given to it by those participating in the robbery; and that I am justified in the conclusion, that as they had the pick of the cargo, they would probably take as good as they could find, and that the article in question was at least a good quality of Cienfuegos molasses uninjured.

After these goods were landed, the vessel proceeded to St. John, delivered her cargo and took on board a cargo of lumber destined for Philadelphia, together with a quantity of tea and a gallon or two of brandy. She again touched at Machiasport, landed in the night time the tea and so much of the brandy as had not been consumed, and also a barrel of molasses which was part of her Cuba car-

go, and which it is claimed, the owners at St. John gave to the captain on his representation that it was damaged.

The claimant contends that, as this vessel was destined for St. John, and did not intend to discharge her cargo at Machiasport, the landing of a portion of it at that place, would not work a forfeiture; and for this relies on the opinion of Washington, J., in U. S. v. The Hunter [Case No. 15,428], in which it was decided that a merchant vessel from which goods are unladen without a permit after her arrival within the limits of the United States, but before she has reached her port of destination, is not liable to forfeiture under the fiftieth section of the act of 1799. In that case the vessel was destined to a port of discharge in the United States, and unloaded part of her cargo before arriving there, whilst in the present case, the vessel was not destined to any port of discharge in this country, but was bound from one foreign port to another foreign port, and in the prosecution of that voyage landed in violation of law the goods in question in her home port.

The doctrine of that case however, has not been acknowledged in this circuit. Mr. Justice Story in The Industry [Case No. 7,028], and The Harmony [Id. 6,081], established a different doctrine, and held in the first case that this fiftieth section applies to all unlading of goods without a permit in any port or place within any collection district, whether such port or place be the port originally intended for the port of discharge or not.

It thus appears that of her cargo on board at Cuba, nine barrels of molasses, two of sugar and 1,000 cigars were landed in violation of law at Machiasport; and there is also evidence tending to show a landing of another barrel at Mt. Desert, but the same is not set forth in the libel. In order to work a forfeiture of the vessel, it must appear that the goods so landed were of the value of $400. In the first place, the claimant contends that the portion of the goods landed on her voyage from St. John to Philadelphia could not be united to those landed previously, in order to make up the requisite amount. I am however of opinion that the government has a right to insert and include in its estimate all the value of the cargo which was shipped from Cuba, and was on board when she first entered Machiasport, whether it was landed then, or at a subsequent time, provided it all the time remained on board as a part of the cargo. The language of the fifth section of the act of 1799, under which a forfeiture is claimed, is "No goods, &c., brought in any ship * * * from any foreign port or place shall be unloaded or delivered from such ship or vessel within the United States, but in open day, except by special license from the collector for such unloading or delivering, nor at any time without a permit; * * * and all goods, &c., so unladen shall become forfeited; and when the value thereof, according to the highest market prices of the same at the port or district when landed shall amount to $400, the vessel, &c., shall be subject to forfeiture."

These goods were all brought from a foreign port in this vessel; they constituted a portion of her cargo; were all loaded at the same time; belonged to the same person; were all destined to the same port; and the fact that a portion was landed at one time, on the passage to that port, and the residue remained on board and completed the voyage, and was afterwards brought back and landed at the same port where the other portion of the same cargo had been previously landed by the same crew, from the same vessel, without any unloading or unshipment, cannot save the case from the express letter of the act; although unladen on two different days, it was still an unloading of the cargo of this vessel, brought in her from a foreign port; and the interruption of these proceedings by sailing to an intermediate port, and afterwards returning with a portion of the same cargo, which was on board to enable its unlading and delivery, should not save it from forfeiture. A different construction would certainly go far to defeat this provision of the law; for a vessel might land from time to time, portions of her cargo in Passamaquoddy bay, taking care that the amount should be less than $400 at any time; and make a short trip to Campo Bello, complete her voyage, and then evade the forfeiture.

I think therefore the barrel landed in April, being a portion of the original cargo, should be included in fixing the value of the goods landed. I do not think that the tea and brandy can be so included and joined with the goods landed in March, and for the reason that they were not brought in this vessel from Cuba; they formed no part of the cargo on board when she made the first landing, and could not therefore have been landed at that time; they were not a part of what was then landed, and were in no way connected with it, and could not be. If they were so considered, I do not see but that a vessel might be liable to forfeiture, which should be running between here and the provinces, and should in the course of the season in violation of law, land goods aggregating the value of $400 during her several voyages, but of which not more than $50 in value was landed at one time, or constituted a part of any one cargo.

I think the cargo so landed must come from the foreign port together as a whole, at the same time, and be all landed from the vessel as a part of the foreign cargo, in order to create a forfeiture. If I understand the district attorney, he contends that this vessel, having sailed from the United States to Cuba, and there taken on board a cargo for a foreign port, if she illegally land foreign goods aggregating $400 in the whole, at various times, before she returns again openly to the United States, would be liable to for-

feiture; his theory is, that it is but a single voyage until her return. Such is not the evidence in this case; the cruise from Cuba ended at St. John. She did not then intend to return to her home port, but took freight for Philadelphia. That was certainly a new voyage, as much as if she had gone to Australia; and I cannot perceive but she would have been openly liable for forfeiture, if she had landed a quantity of goods when bound to Australia, as she would be in this case; the goods landed being required in such case, to be added to those landed on the voyage from Cuba, in order to make up the sum of $400.

The allegation in this libel is that eight barrels of molasses were landed; but the proof satisfies me that nine were in fact landed. As the libel now stands I am not justified in joining the ninth barrel to the other lot, so as to increase the amount apparently landed; the allegation and proof must conform, and this is a material variance. I must therefore hold the government to the charge of the eight barrels and reject the evidence in relation to the ninth.

But there is another serious objection in my view to joining the articles landed in April to those landed in March, so as to increase the value to $400; and that is, the libel does not charge them as being a part of one cargo, brought from a foreign port, and landed from the same vessel; they are in no way connected, and are not alleged as together constituting the offense of landing in violation of law, goods aggregating in value $400; but on the contrary they are distinctly averred and set forth to be entirely separate and independent transactions, each by itself, independent of the other, constituting such a violation of law as will create a forfeiture.

The government having fixed the value of the cigars by the averments in the libel, I am concluded by it; though if it had been omitted, I might have felt justified in finding the highest market value of Cuba cigars beyond the sum of $100 per M., but taking this as it is, with the count as framed I do not feel authorized in presuming that goods of the value of $400 were landed at either time from this vessel. The proof is, that the packages of tea were not full chests, but were halves and quarters, which are ordinarily spoken of as chests, being used rather as generic, than descriptive of the precise package. It is seldom at the present day, that whole chests of tea are seen; and when one of the crew speaks generally of five chests being brought on board at St. John, and another describes the chests as two half and three quarter chests, agreeing in number of packages, and the latter description being conformable to the custom of trade, I must adopt it as a true description of the packages.

The fifth count charges a forfeiture, by reason of the importation on board of said brig from St. John into Machiasport, of a quantity of brandy in a cask less than fifteen gal-

lons. The act of 1799 as modified by act of 1827, prohibited importation of brandy in casks of less capacity than fifteen gallons; and declared that the liquor imported contrary to the provisions of the law, together with the ship or vessel on which it was imported, should be forfeited, and provided that nothing contained in the act shall be construed to forfeit any spirits imported or brought into the United States in other casks or vessels, or the ship or vessel in which they shall be brought, if such spirits shall be for the use of the seamen on board such ship or vessel, and shall not exceed the quantity of four gallons for each seaman.

It is in evidence that one of the seamen of this brig whilst at St. John purchased a quantity of brandy, took it on board the vessel, consumed a portion of it, and after arriving at Machiasport, landed the remainder, not exceeding two gallons. I am of opinion that by this a forfeiture was not created. The law in my view contemplates such a proceeding, and never intended that the vessel should incur a forfeiture thereby. This brandy was bought by one of the crew for his own use, and probably was to a great extent used up on the voyage; the original quantity did not exceed that allowed by the law, and it was on board for the use of the seamen, and at the time of its importation, there was no violation of the law; on the contrary it was within the very letter of the statute, imported for the use of the seamen. In my view, the law was founded on the supposition that there might be an overplus of spirits put on board at the place of departure for the use of the crew, and if on the vessel's arrival the overplus did not exceed the four gallons, no forfeiture was incurred of either the vessel or the article. But it is said it was landed at Machiasport, and was not therefore for the use of the seamen on the voyage. This objection would apply to any landing of spirits at the port of final discharge, when the spirits had been obtained for the use of the crew. It is not a long time since it was quite customary to furnish daily grog to the ship's crew. Suppose in such a case, a cask of rum had been purchased by the master at Cuba for the use of the crew, the whole of which would have been consumed on an ordinary voyage to Portland, but by reason of favorable winds the vessel arrives before the rum is consumed, having on board not exceeding a gallon for each of the crew, what is to be done with the article? According to the construction of the district attorney, if it is imported, or brought into the country in a cask less than that mentioned in the statute, it works a forfeiture of the vessel, notwithstanding it was clearly intended for the use of the crew. The only course that could be adopted would be to destroy it before its arrival. because it is not the landing, but the importation, bringing into the country, which creates the forfeiture. Hun-

dreds of such instances have occurred, where the surplus of spirits, procured in a foreign port for the use of the crew, and which remained at the end of the voyage, not being in excess of the statute quantity, has been landed without objection; and I cannot doubt, that if spirits are in good faith put on board for the use of the crew, never constituting any portion of the cargo, but used from by the crew in whole or in part until the arrival of the vessel, it is clearly within the proviso of the 105th section of the act of 1799, and that a subsequent landing of it, if less than four gallons for each seaman, without payment of duties, whilst it might subject the article itself to forfeiture, would not in any way affect the vessel from which it was landed.

In the case of The Governor Cushman [Case No. 5,646], Miller, district judge of Wisconsin, held the vessel not subject to forfeiture, where two of the crew had taken on board at Sarnia, without the knowledge of the captain, a quantity of distilled liquors in excess of that allowed the crew by law, the quantity being nine gallons at one time, and on the subsequent occasions three gallons each time. From the facts of the case as reported, it is manifest there was a landing in the States of a portion of these liquors, and that they were originally purchased by the crew for sale, rather than for their own use; and yet, the court decreed no forfeiture was thereby incurred. That case was much stronger for the government than the present, both in the quantity of liquors, and object of the purchase.

Libel dismissed. Certificate of probable cause.